IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. 06-cv-01165-JLK-BNB

CHRISTINA PACHECO,

        Plaintiff,

v.

SHELTER MUTUAL INSURANCE COMPANY; and
SHELTER GENERAL INSURANCE COMPANY, a Missouri corporation,

        Defendants.

---

## ORDER ON PENDING MOTIONS

---

KANE, J.

        This case was reassigned to me following the demise of Judge Phillip S. Figa.
I have reviewed the file, the pending motions and the briefs and other documents in
support thereof and in opposition thereto.

        This matter comes before me on Defendant's Motion for Summary Judgment
(Dkt. # 17) filed December 15, 2006.  Plaintiff filed her opposition to the motion on
January 10, 2007 (Dkt. # 26).  Defendant filed its reply on January 29, 2007 (Dkt. # 30).

        The matter also comes before me on plaintiff's Combined Motion for Summary
Judgment (Dkt. # 19), also on filed December 15, 2006.  Defendant filed its opposition
on January 10, 2007 (Dkt. # 25).  On January 29, 2007, plaintiff filed a reply in support
of her motion (Dkt. # 31), as well as a separate "supplement" to her motion (Dkt. # 32).
Thereafter, on February 23, 2007, plaintiff filed a motion for leave to file a substituted
"Section B" to her reply brief (Dkt. # 34).  That motion was denied for failure to comply

with D.C.COLO.LCivR 5.6A (Dkt. # 36). On March 2, 2007, plaintiff filed a second motion to substitute a "Section B" to her previously filed reply brief (Dkt. # 37). Judge Figa did not rule on plaintiff's request. Nonetheless, on March 23, 2007, defendant filed a response to plaintiff's motion to substitute, which argued that the substitution should not be allowed, but which also presented substantive argument if the substitution were allowed (Dkt. # 40). On April 10, 2007, plaintiff filed a further reply arguing that the substituted Section B should be allowed, and responding to defendant's substantive opposition (Dkt. # 44). Plaintiff's second motion to substitute a Section B is granted.

On March 23, 2007, a Final Pretrial Order was approved by the Magistrate Judge (Dkt. # 39). Both the defendants' motion and plaintiff's motions are ripe for determination. I have determined that oral argument on the motions is not necessary.

## I.    BACKGROUND

On August 8, 2000, Plaintiff Christina Pacheco, then a 19-year old living with her parents, was injured while driving a 1984 Chrysler automobile insured by Defendant Shelter Mutual Insurance Company ("Shelter Mutual") due to the fault of an underinsured motorist, Johnny Baca. With the consent of Shelter Mutual, plaintiff settled her tort claim against Baca in June 2003 for the $25,000 bodily insurance limit under his policy. Plaintiff thereafter made a claim against defendants, apparently under the uninsured/underinsured motorist ("UI/UIM") coverage of the Shelter Mutual policy on which she was a named insured, as well as under the UI/UIM coverage of two other

policies issued to her parents, Bernice and Tino Baca, by Defendant Shelter General Insurance Company ("Shelter General").

The parties have stipulated that plaintiff is a named insured in the declarations of Shelter Mutual Insurance Company Policy # 513682601-7 ("Policy # 7"), which provides UM/UIM coverage in an amount equal to the bodily injury limits of $50,000/100,000 (Final Pretrial Order, Stipulations, ¶ 3). The parties apparently disagreed on the extent of plaintiff's injuries. The also disagreed on whether plaintiff was covered under the two policies issued to her parents. The parties stipulated that plaintiff is not named in the declarations of the two policies issued to her parents (Policy # 513682601-6, hereafter referred to as "Policy # 6," and Policy # 513682601-5, hereafter referred to as "Policy # 5"), nor is she a spouse to those named in the declarations (*id.*, ¶ 4). Plaintiff apparently claimed that she is covered by the two policies as a "resident relative" of the named insureds, that the UI/UIM coverage of Policy # 6 should have a higher limit of $100,000 per person, and that the anti-stacking provisions in the two policies do not preclude her from seeking additional coverage up to the full amount of her damages under those policies.

The dispute between plaintiff and defendants over the UI/UIM coverage was submitted to arbitration pursuant to plaintiff's demand. Plaintiff states that the demand was sent on August 4, 2003 (*See* Plaintiff's Combined Motion for Summary Judgment at 1) but a copy of the demand has not been provided to the Court.[1] The matter was

---

[1] The Amended Award states that arbitration was demanded on August 3, 2004.

arbitrated in December 2005, and the three arbitrators issued their Amended Rulings and Award ("Amended Award") on February 17, 2006.

The arbitration panel found that plaintiff sustained $125,000 in total damages caused by the underinsured motorist, and that she was entitled to interest pursuant to C.R.S. § 13-21-101 on $100,000 of that amount, as that was the amount remaining unpaid by the underinsured motorist (Amended Award, ¶ 8). The arbitrators also awarded plaintiff $25,000 in underinsured motorist benefits under the policy issued by Shelter Mutual (Policy # 7). It calculated that amount by taking the $50,000 limit of the underinsured motorist coverage contained in that policy, and subtracting the $25,000 plaintiff had received from the settlement with Baca (*id.*, ¶ 9). The panel also awarded plaintiff arbitration costs in the amount of $8,123.59 (*id.*, ¶ 10).

The arbitrators, however, did not reach the plaintiff's other claims. They found that plaintiff is "arguably an insured as a resident relative under the two policies issued by Shelter General Insurance Company, which is an 'affiliated company' to [Shelter Mutual] and they found that all three policies allow for a determination "of whether someone is legally entitled to recover under the policy and the amount due under coverage E [underinsured motorist coverage]." Amended Award, ¶¶ 2-3. However, the three-member panel by a spilt vote of 2-1, with arbitrator Kaufman dissenting, stated that they did not have authority to determine the stacking issue based on the decision in *State Farm Mutual Automobile Insurance v. Stein*, 886 P. 2d 326 (Colo. App. 1994), and therefore they stated that "[t]he split panel will not decide whether to stack the policies and leaves that to the district court." *Id.*, ¶ 4. The panel also concluded, with

4

arbitrator Kaufman dissenting, that it did not have jurisdiction to determine the limits of

underinsured coverage available under either of the two policies issued by Shelter

General to plaintiff's mother and father. *Id.,* ¶ 6.

The panel concluded its ruling with the following statement:

The awarded $25000.00 in UIM benefits and $8123.59 in costs are due
and payable without affecting the Claimant's rights to seek recovery of the
balance of the total damages in the amount of $125,000.00 plus interest
as provided for by C.R.S. 13-21-102 on $100,000, as UIM benefits, and
any satisfaction of award shall so provide.

Amended Award, ¶ 12.

After the decision, Defendant Shelter Mutual paid plaintiff the $25,000 awarded

by the arbitrators, but apparently did not pay the $8,123.59 in costs awarded.  On May

16, 2006, following this split decision, plaintiff filed her "Complaint and Motion For

Order Confirming Arbitration Award" in the Denver District Court, naming both Shelter

Mutual and Shelter General as defendants (Final Pretrial Order, Stipulations ¶ 10).

After filing their answer in the state court, defendants removed the case to this Court on

June 19, 2006.

## II.    PLAINTIFF'S COMPLAINT

Plaintiff's complaint asserts four claims for relief.  In her first claim she seeks a

declaratory judgment and a monetary judgment on two matters (Complaint, ¶ 24).  First,

plaintiff seeks a "declaration" that one of the policies issued to her parents (Policy # 6)

should be construed to provide a $100,000 limit for UI/UIM coverage, although the

policy itself does not expressly so provide on its face, because defendant failed to

properly offer UM/UIM coverage in an amount equal to the bodily injury limits and

obtain rejection of such coverage in writing in accordance with C.R.S. § 10-4-609(2).

This claim, relying as it does on the decision in *Allstate Insurance Co. v. Parfrey*, 830

P.2d 905 (Colo. 1992), and presumably its progeny, is essentially a claim seeking

reformation of the policy. Second, plaintiff seeks confirmation of the arbitration award

to the extent it finds plaintiff's damages are $125,000 and that the allowed costs are

$8,123.59 (*id.*, ¶¶ 24, 43).

In her second claim for relief plaintiff seeks a declaratory judgment that the anti-

stacking language in the two policies issued to her parents is not applicable to her

situation, and for a judgment against defendants for the unpaid amount of damages that

would result if stacking is permitted. In her third claim plaintiff requests an award of

statutory interest under C.R.S. § 13-21-101 on the amount of damages from the date of

the accident, consistent with the arbitrators' award. In her fourth claim plaintiff requests

moratory interest on all benefits allowed from the date her demand was constructively

refused by defendants, which she states is July 26, 2004.

## III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S RESPONSE

Defendants filed their motion for summary judgment on December 15, 2006 (Dkt.

# 17). They seek summary judgment on all of plaintiff's claims, arguing that the claims

to confirm the arbitration award are untimely under a provision of the 1975 Uniform

Arbitration Act, formerly codified at C.R.S. § 13-22-213 (Motion at 4-5), and that her

remaining claims are untimely under the statute of limitations applicable to claims for

UI/UIM insurance, C.R.S. § 13-80-107.5 (Motion at 6-7). The parties have stipulated

that the 1975 Uniform Arbitration Act governs plaintiff's claims to confirm the arbitration award, as the insurance contract providing for arbitration of the claims was entered into while the 1975 Act was still in effect (Final Pretrial Order, ¶ 9).

Plaintiff responds that there is no time limit in the 1975 Act for filing a motion to confirm arbitration awards. She also contends that she met the time limits contained in the statute of limitations cited above because she demanded arbitration within the two-year period provided for in the statute. Alternatively, she argues that the defendants are estopped from asserting a statute of limitations defense because they failed to timely produce the relevant insurance policies to plaintiff.

## IV.    ANALYSIS OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

As plaintiff correctly points out, the applicable provision of the 1975 Uniform Arbitration Act, formerly codified at C.R.S. §13-22-213, and which is similar to the current version of the Act now codified at C.R.S. §13-22-222, stated as follows:

> Upon application of a party, the court shall confirm an award, unless
> within the time limits imposed in this part 2 grounds are urged for vacating
> or modifying or correcting the award, in which case the court shall
> proceed as provided in sections 13-22-214 and 13-22-215.

Contrary to the argument advanced by defendants, this provision relating to confirmation of an arbitration award contained no 30-day time limit within which the motion to confirm must be made. The only 30-day time limit contained in the former statute related to motions to vacate an arbitration award, C.R.S. §13-22-214(2), and motions to modify or correct an award, C.R.S. § 13-22-215(1). There is no showing here, or any argument, that before plaintiff's filing of her motion to confirm the Amended

Award, there was a motion to vacate, modify or correct the award, which would have arguably shortened the time limits. Accordingly, defendants' motion for summary judgment, to the extent it is based on the 1975 Uniform Arbitration Act, is denied.

The pertinent provisions of the statute of limitations on which defendants rely, C.R.S. §13-80-107.5(b), provide:

> b) An action or arbitration of an "underinsured motorist" insurance claim, as defined in section 10-4-609(4), C.R.S., shall be commenced or demanded by arbitration demand within three years after the cause of action accrues; except that, if the underlying bodily injury liability claim against the underinsured motorist is preserved by commencing an action against the underinsured motorist or by payment of either the liability claim settlement or judgment within the time limit specified in sections 13-80-101(1)(n) and 13-80- 102(1)(d), then an action or arbitration of an underinsured motorist claim shall be timely if such action is commenced or such arbitration is demanded within two years after the insured received payment of the settlement or judgment on the underlying bodily injury liability claim. In no event shall the insured have less than three years after the cause of action accrues within which to commence such action or demand arbitration.

Defendants contend that plaintiff's filing of her complaint in May 2006 was more than three years after the date of the accident (August 8, 2000), the date on which her cause of action accrued. Defendants further contend that plaintiff's filing of her complaint in May 2006 was more than two years after the settlement of her underlying claim against Baca, which apparently occurred in June or August of 2003. Therefore, they argue plaintiff failed to meet either of the two limitations periods contained in the statute.

Plaintiff correctly points out that the statutory language is not limited to the filing of a civil action within two years of a settlement, but also references commencement of

an arbitration within the two-year period following settlement. Plaintiff states that here she filed her demand for arbitration within two years of the settlement with Baca. Although plaintiff has not provided a copy of the arbitration demand, and it is not clear if it was made in August 2003 or August 2004, in either case it was made within two years of the June 2003 settlement with Baca. Plaintiff asserts that the claims she now raises in her civil complaint are "ancillary" to the claims heard in the arbitration. Relying on the decision in *Harrison v. Pinnacol*, 107 P.3d 969 (Colo. App. 2004), she argues that claims that are ancillary to a timely filed arbitration are not barred by a statute of limitations.

Defendants respond that plaintiffs claims are not "ancillary" to the arbitration as the arbitrators never had "jurisdiction" to hear her claims regarding stacking of the insurance policies and obtaining higher liability limits. Defendants also suggest that plaintiff could have brought the claims earlier so that they would have been filed within the three-year period provided for in the statute.

In *Harrison, supra,* the court determined that a plaintiff's declaratory judgment action seeking apportionment of damages he received in a separate tort settlement was not ancillary to the plaintiff's workers' compensation claim, and therefore the declaratory judgment action was governed by a separate statute of limitation that rendered plaintiff's filing untimely. In so ruling, the court stated that '[r]esolution of timeliness begins with characterizing the apportionment case as either an independent action or a proceeding ancillary to the workers' compensation case." 107 P.3d at 971. The court concluded that the declaratory judgment action was an independent and not

an ancillary action, primarily because the Industrial Claims Office had no jurisdiction to determine how proceeds from a third party should be apportioned. Because the declaratory judgment action was independent and not ancillary it was found to have been filed too late. *Id.* at 971-72.

In the instant case, plaintiff's claim for a determination of the applicability of the anti-stacking provisions of the policies and the claim for increased limits of liability appear to be at least ancillary to the claims submitted to arbitration, if not the very claims submitted to arbitration. As noted, the Court has not been provided with a copy of the arbitration demand, but from a review of the Amended Award it is apparent that the arbitrators considered these two claims, deciding by a 2-1 vote that they did not have authority to decide them. Thus, I can safely infer, without review of the arbitration demand, that the claims were submitted to arbitration.

Defendants, arguing this case is parallel to the situation in *Harrison*, contend that submitting these claims for arbitration does not render them ancillary if the arbitrators had no jurisdiction to hear them. However, in arbitration under the 1975 Uniform Arbitration Act, unlike jurisdiction in a worker's compensation case, the scope of arbitration is generally a matter the arbitrators must decide in the first instance. *See e.g. Cabs, Inc., v. Delivery Drivers, Local 435*, 566 P. 2d 1078, 1080-81 (Colo. App. 1977) (where there is a reasonable basis for construing the agreement in support of arbitrability the legislative policy underlying the Act requires that the scope of the arbitration be determined by the arbitrator). While it is true that the arbitrators here ultimately determined by a 2-1 vote that they did not have authority to decide plaintiff's

claim as to the applicability of the anti-stacking provisions of the policies and the claim for increased limits of liability, the claims first had to be submitted to them.

This is not a case where there was a dispute as to whether there was any agreement to arbitrate at all. Nor is it a case where there is a dispute as to whether underinsured motorist claims had to be submitted to arbitration. As the dissenting arbitrator points out, the insurance policy expressly provides for arbitration of "the amount of payment which may be owing under this coverage E [underinsured motorist]." Amended Award at 3. Without second guessing the arbitrators' determination of this issue, I find that submission by plaintiff of her claims for arbitration was not an unreasonable interpretation of the arbitration clause. Certainly, I would not find that "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *See AT & T Techs., Inc. v. Communications Workers,* 475 U.S. 643, 648 (1986).

Thus, at a minimum, I find that the claims now before me were at least ancillary to the arbitration matter. Since plaintiff filed her arbitration demand within two years of the settlement with Baca, and filed her complaint in this case within 90 days after the arbitrators issued their Amended Award, her claims in this case are not barred by the statute of limitations cited by defendants.

Moreover, I reject the notion advanced by defendants that plaintiff could have filed this lawsuit earlier than she did, perhaps while the arbitration was still pending. Such duplicative filings are not a procedure which the statute of limitations was meant to encourage. Since I find that the statute of limitations does not bar plaintiff's claims,

11

I need not reach the alternative argument that defendants are estopped from asserting the statute. Accordingly, defendants' motion for summary judgment (Dkt. # 17) is denied.

## V. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS' RESPONSE

Plaintiff's Combined Motion for Summary Judgment appears to seek: 1) an order confirming the arbitrators' award, including specifically the award of costs of $8,123.59; 2) a declaration that the policies issued by Shelter General to her parents (Policy ## 5 and 6) may be "stacked" with the policy on which plaintiff is a named insured (Policy # 7), with the separate limits of the two policies added together to establish the total policy limit; 3) a ruling that Policy # 6 be reformed to provide a $100,000 limit of per person under UI/UIM coverage; and 4) a judgment for moratory interest.

I note here that the UI/UIM limits under each of the three policies as issued are $50,000. Each of the policies has a provision titled "other auto insurance in the company," which limits the companies' total limit of liability under multiple policies issued to the same insureds to "the highest applicable limit of liability or benefit under any one policy." Such provision appears to be generally enforceable here, consistent with the language in C.R.S. §10-4-609(2), and plaintiff does not argue otherwise.

Plaintiff argues, nonetheless, that although she may be covered by Policy ## 5 and 6 as a "resident relative" she is not a named insured on those policies, and therefore she can "stack" the limits of the two policies on top of Policy # 7, on which she is an insured. Plaintiff apparently further argues that despite the "other auto insurance"

12

language contained in Policy ## 5 and 6 as set forth above, she should be permitted to stack both policies on top of hers for a total liability limit of at least $150,000. Moreover, plaintiff argues that not only is she permitted to "stack" the three policies, but she also argues that Policy # 6 is subject to be reformed to a liability limit of $100,000 for UI/UIM coverage.

Defendants contend that plaintiff cannot stack Policy ## 5 and 6, or collect any amounts under those policies, because she does not satisfy the definition of an insured person under the provisions of those policies. If plaintiff is not an insured person under either Policy # 5 or Policy # 6, whether or not the policies could be stacked, or how they may be stacked, is immaterial, as is the issue of whether Policy # 6 should be reformed. Based on this argument, the defendants' response brief requests this Court to enter summary judgment in their favor against plaintiff (Defendants' Response (Dkt. # 25) at 21). Furthermore, defendants argue that even if plaintiff is found to be covered under the parents' policies and the policies could be stacked, there is no factual basis for reforming Policy # 6.

Defendants also argue they are not liable for moratory or prejudgment interest, in part because any such interest would be subject to the policy limits, which plaintiff has already received from the one policy under which she was admittedly insured. In response to plaintiff's request for confirmation of the arbitration award, defendants argue only, as noted above, that the plaintiff's motion seeking confirmation was filed too late. I have already addressed those arguments above. Defendants make no separate response to plaintiff's request for a judgment for the amount of costs awarded in

arbitration nor do they offer any explanation as to why plaintiff's requests for a judgment confirming the award of costs should be denied.

## VI.    ANALYSIS OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### 1.    Plaintiff's claim for award of arbitration costs

I agree that plaintiff is entitled to confirmation of the arbitrators' award of costs of $8,123.59 and summary judgment for plaintiff in that amount is granted.

### 2.    Plaintiff's claim for reformation of Policy # 6

I cannot grant summary judgment as to plaintiff's claim for reformation of Policy # 6 because the affidavits filed by the parties reflect a genuine dispute of material fact as to whether the higher limits for the UI/UIM coverage were properly offered by Shelter General.  Bernice Pacheco, plaintiff's mother and one of the named insureds on Policy # 6, attested in her affidavit that:

> [f]rom the outset I selected 100,000/300,000 bodily injury coverage on the new policy for the leased 2000 GMC Sonoma (policy #6).  It was always my intent and desire to purchase UI/UIM coverage in the same amount as the bodily injury coverage for the 2000 GMC Sonoma, as I had done for all of my other vehicles.  I would have selected the 100,000/300,000 UI/UIM coverage with the 100,000/300,000 bodily injury limits for my 2000 GMC Sonoma (policy #6) had it been properly offered to me because I always match the UI/UIM coverage with the bodily injury coverage on my vehicles and did so with my other vehicles.

Affidavit of Bernice Pacheco, Exhibit to Plaintiff's Reply (Dkt. # 31), ¶¶ 3-5.

By contrast, Carol Gofran, the agent for the Shelter companies who serviced the Pacheco's account, attested in her affidavit, *inter alia*  that:

> The Shelter General Insurance Company policy on unit # 6 began with a per person bodily injury limit of $50,000 and a per person uninsured/underinsured motorists limit of $50,000.  Ms. Pacheco

increased the per person bodily injury limit to $100,000, but she kept
the UIM limit the same. Although I do not recall the specific conversations
I had with the Pachecos on purchasing insurance for these two vehicles,
my practice is that I always ask my customers what limits of insurance
they want, and I have always recommended to my customers that they
purchase UI/UIM coverage in the same amount as bodily injury coverage.
I feel I would have made the same recommendation to the Pachecos for
Unit # 5 and Unit # 6.

Affidavit of Carol Gofran, Exhibit A-7 to Defendants' Response (Dkt. # 25), ¶¶ 4-5.

The statute on which plaintiff relies, C.R.S. § 10-4-609 (2000) required in

subparagraph 2 at the time these policies were issued essentially that an insurer

offering UI/UIM coverage offer the insured the right to obtain higher limits of coverage,

but was not required to offer bodily injury coverage higher than $100,000. Subpara-

graph 3 of the statute provided that after selection of limits by the insured, the insurer

was not required to notify any policyholder in any renewal policy of the availability of

such coverage or optional limits as set forth in subparagraph 2.

Based on the conflicting affidavits described above, I cannot say there is no

genuine issue of fact as to whether or not Shelter General met its obligation under this

statute. Accordingly, plaintiff's request for summary judgment as to her claim to reform

Policy # 6 is denied.

### 3. Plaintiff's claim for coverage under Policy ## 5 and 6

Plaintiff first contends that the arbitrators found that she is insured as a "resident

relative" under these two policies, but not as a named insured, and therefore the anti-

stacking language in the policies does not apply to her claim. Plaintiff furthers argue

that both defendants here are bound by this purported finding.

I do not agree that the arbitrators made such a binding finding in the arbitration proceeding. Paragraph 6 of the Final Award, on which plaintiff relies, does not make the finding described by plaintiff. Rather, that paragraph describes the issue which the arbitrators, by a 2-1 vote, determined not to decide.

Plaintiff apparently contends, whether or not the arbitrators so decided, she should be covered under the UI/UIM coverage of the two policies as a "resident relative." The two policies, in identical language, provide UI/UIM coverage for bodily injuries which an "Insured" is legally entitled to recover from the operator of an underinsured motor vehicle (*see* copy of Policy # 6, attached as Exhibit 5 to Plaintiff's Motion (Dkt. # 19), at 17). Insured is defined in the UI/UIM coverage of both policies as "You or any relative." *Id.* The term "relative" is defined in the general definitions section[2] of the policies as "a person related to **you** by blood, marriage, or adoption who is a resident of and actually living in **your** household, provided neither the relative nor the relative's spouse owns, in whole or in part, an **auto**." *Id.* at 13. "**You**" and "**your**" are defined in the general definitions as "the insured person named in the Declarations and spouse." *Id.* The insured persons named in the declarations of these two policies are "Bernice and Tino Pacheco."

There is no dispute that plaintiff is a relative of the named insureds, Bernice and Tino Pacheco, or that she was a resident of their household at the time of the accident.

---

[2] The general definitions section of the policies states that "through this policy words shown in bold type have the meaning below, except where a different meaning is set out in a particular coverage or endorsement." *See* copy of Policy # 6, attached as Exhibit 5 to Plaintiff's Motion at 11.

Thus, in ordinary parlance, she was a resident relative of the insureds. Defendants have denied that she is covered, however, because the policy definition of a covered relative, excludes one who "owns, in whole or in part, an auto."

Plaintiff does not dispute that she owned an auto, in whole or in part, at the time of the accident. Indeed, that is the auto she was driving at the time of the accident which was insured under Policy # 7 and pursuant to which policy plaintiff was paid $25,000 in underinsured coverage by Shelter Mutual in accordance with the arbitrator's award. Rather, what plaintiff now contends, is that the definition of "relative" set forth in Policy ## 5 and 6, to the extent it excludes coverage for a resident relative who owns, in whole or in a part an auto, contravenes the public policy implicit in the Colorado statutory scheme for UI/UIM coverage. *See* Plaintiff's Reply Brief (Dkt. # 31) at 8; and plaintiff's Substituted Reply (Dkt. # 44) at 1-3.

In support of her argument, plaintiff relies on the decisions in *DeHerrera v. Sentry Insurance Co.*, 30 P.3d 167 (Colo. 2001) and *Jaimes v. State Farm Mut. Auto. Ins. Co.*, 53 P.3d 743 (Colo. App. 2002). In both cases, the courts found that the claimant was entitled to UI/UIM coverage, despite the language of the respective policies, because the public policy underlying the statutory requirements for UI/UIM coverage superseded limitations contained in the policy provisions. Defendants argue that the facts of those two cases were different from the situation presented here, and therefore the decisions do not dictate that the exclusion contained in the definition of "relative" in Policy ## 5 and 6 violates public policy.

17

In *DeHerrera*, the plaintiff, a minor son living in his parents' home, was injured by an underinsured motorist while he was riding his off-road motorcycle. He sought coverage under both the PIP and the UI/UIM coverage of his parents' policy with Sentry. The policy provided for the payment of medical expenses for bodily injury "suffered in a car accident while occupying a car or, as a pedestrian as a result of having been struck be a motor vehicle." 30 P.3d at 170. The policy definition of the term "car" did not include a motorcycle. Since, at the time of the accident, the minor son was neither occupying a car nor was he a pedestrian struck by a car, Sentry denied coverage under both PIP and UI/UIM. *Id.* at 170-71.

The trial court granted summary judgment to the insurer and the Court of Appeals affirmed. *Id.* The Colorado Supreme Court granted certiorari on three questions, but answered only the one question relevant to the instant case, namely, whether the Court of Appeals erred by holding that a provision in an uninsured motorist policy limiting coverage to those "occupying a car, or as a pedestrian" is not a violation of the public policy expressed in the uninsured motorist statute, C.R.S. §10-4-609. *Id.* at 171.

The Colorado Supreme Court concluded that "the language of the UM/UIM statute and the purpose of that statute require that UM/UIM insurance apply to an insured person when injured by a financially irresponsible motorist, irrespective of the vehicle the injured insured occupies at the time of injury." 30 P.3d at 176. The Court further held that "the UM/UIM statute requires that UM/UIM insurance apply to an insured person who purchases such coverage when injured in an accident caused by an underinsured motorist, irrespective of the vehicle the injured insured occupies at the

time of injury." *Id.* Since the Sentry policy limited coverage to one occupying a "car" at the time of the accident, the limitation was found to be in violation of the stated statutory purpose, and therefore void as against public policy.

In *Jaimes,* the plaintiff was injured in an accident with an underinsured motorist while he was driving a Nissan auto owned by him and which had a $25,000 bodily injury limit under the policy issued on the car by State Farm. Plaintiff's wife owned a Subaru which was insured under a separate policy, apparently also issued by State Farm, which had a $100,000 policy limit. Plaintiff sought coverage under the policy issued on the wife's car, seeking to take advantage of the higher policy limits. State Farm denied coverage because the UM/UIM coverage in the Subaru policy stated that there is no coverage for bodily injury to an insured while occupying a "motor vehicle owned by you . . . if it is not insured for this coverage under this policy." *Id.* at 745. The court described this language as the "owned but not insured" exclusion under the UI/UIM policy.

In applying the *DeHerrera* decision in *Jaimes*, the Colorado Court of Appeals described *DeHerrera* as considering the precise language of the UI/UIM statute, and holding that it "contains no provisions excluding protection for an insured based on the kind of vehicle an insured occupies at the time of injury." 53 P.3d at 746. The decision further quoted the language of *DeHerrera* which stated that "the statute provides coverage for person[s]; it does not place geographical limits on coverage and does not purport to tie protection against uninsured motorists to occupancy in any kind of vehicle," citing to *DeHerrera supra*, 30 P.3d at 175. Based on this analysis, *Jaimes*

concluded that the policy's "'owned but not insured' exclusion is void as against the public policy of Colorado." 53 P.3d at 747.

Plaintiff argues that the holdings in these two cases mandate the conclusion here that defendants' definition of relative, to the extent it excludes coverage for a relative who owns her own car, is void as against the public policy underlying the UI/UIM statute in effect at the time Policy ## 5 and 6 were issued. Plaintiff submits that:

> [b]ecause it is the intent and purpose of the statute that UM/UIM coverage serve as a "replacement" for the tortfeasor's liability coverage (*DeHerrera* at 174), UM/UIM coverage cannot be limited based on immaterial and unauthorized factors such as whether the injured resident relative was in a vehicle owned but not insured under the policy (*i.e.*, *Jaimes*); whether the injured resident relative was occupying a particular vehicle (*i.e.*, DeHerrera); or whether the injured resident relative owned a vehicle not insured under the policy (*i.e.*, the instant case)."

Plaintiff's Substituted Reply (Dkt. # 44) at 3.

I agree that plaintiff's above characterization of the holdings in *DeHerrera* and *Jaimes* are accurate, but do not agree that they require coverage of plaintiff in the case at bar. As plaintiff recognizes, *DeHerrera* concerned the question of whether UI/UIM coverage could be restricted based on the vehicle occupied by the injured person at the time of the accident, but that is not the issue here. Thus, the holding of *DeHerrera* requiring UI/UIM coverage "irrespective of the vehicle the injured insured occupies at the time of injury" does not mandate coverage here, as plaintiff was not denied coverage here because of the vehicle she occupied. Similarly, the plaintiff here was not denied coverage because she was in an "owned but not insured vehicle" as was the case in *Jaimes*, but rather because Policy ## 5 and 6 only provide coverage for relatives who do

not own a car.  Thus, *Jaimes* does not direct UI/UIM coverage in the instant case.

Rather, the issue here is whether plaintiff's suggested extension of those cases to the

case at bar is warranted.  I think not, for the following reasons.

The guiding principle in *DeHerrera* is its statement that "[a] policy that limits

UM/UIM benefits under circumstances where the General Assembly intended for

UM/UIM benefits to be recovered is invalid."  30 P.3d at 173.  To determine the

legislative intent, *DeHerrera* considered the statutory language in C.R.S. § 10-4-609(1).

The decision focused on the provision in that paragraph which requires an insurer

providing liability and bodily injury insurance also to provide UI/UIM coverage for "the

protection of persons insured thereunder."  *Id.* at 175.  Thus, *DeHerrera* explains that

the statutory purpose is to provide UI/UIM coverage for "persons" who are otherwise

insured for liability or injury, without regard to geographical limits or the occupancy in

any particular vehicle.  *Id.*

In *DeHerrera*, the minor son of the named insured was himself an insured person

under the policy because the definition of "you" in the Sentry policy included him as he

was a resident of the same household as the named insured.[3]  The minor son certainly

would have been covered under UI/UIM had he been injured while riding in a car.  Thus,

the minor son was an "insured" under the policy generally.  Similarly, the plaintiff in

*Jaimes* was generally "an insured" person under the applicable policy because he was

---

[3] The policy definition of "you" in the Sentry policy was quite similar to the definition in the Shelter General policy at issue here, and included "a member of the family who is a resident of the household and who doesn't own a car or whose spouse doesn't own a car."  30 P.3d at 170.

married to and resided with the named insured.  *See* 53 P.2d at 744.  What these cases conclude is that denying UI/UIM coverage to an otherwise insured person, based on the particular fact that the vehicle in which he was injured, or because he was driving a car he owned but which was not insured under the policy, are restrictions not allowed by C.R.S. § 10-4-609(1), because the statute seeks to mandate UI/UIM protection for insureds, in addition to the other protection they have.

In the case at bar, however, plaintiff is not within the definition of an insured person under Policy ## 5 and 6 for any purpose.  She is not a named insured in the policy.  As she argues, she only would have coverage as a "relative" of the named insured.[4]  But, since the definition of relative set forth above applies throughout the policy, plaintiff is excluded from all coverage including medical payments provided for in part II, as well as the UI/UIM described in part IV.  In other words, plaintiff is not an "insured" person under this policy generally.  Not providing plaintiff with UI/UIM coverage does not violate the statutory intent of C.R.S. § 10-4-609(1), which as described in *DeHerrera*, is to make UI/UIM protection available for persons otherwise insured under the policy.  Thus, the phrase used in the statute, "persons insured thereunder" means that "insurers must provide UM/UIM coverage for the protection of persons insured under the liability policy that the insurer is issuing."  *DeHerrera, supra* at 175.  *See also Massingill v. State Farm Mut. Auto Ins. Co.*, ___ P.3d ___, 2007 WL 2003101 at * 5 (Colo. App., July 12, 2007) (a person expressly excluded from liability

---

[4] Had plaintiff been driving the vehicle insured by the policy there would have been coverage under the provision providing coverage for "any other person while occupying an Insured auto" (*see* Exhibit 5 to Plaintiff's Motion at 7), but that was not the situation here.

coverage under the policy because of his poor driving record, may also be excluded

from UI/UIM coverage).  Plaintiff here is not a person insured under the liability policies

Shelter General has issued to her parents, and therefore the statutory intent is not

violated by not providing UI/UIM coverage to her.

Although a policy exclusion of a resident relative who owns an auto, while

including a resident relative who does not own an auto, may at first blush seem an

arbitrary distinction, the purpose behind the exclusion is the recognition that the resident

relative who owns an auto has the opportunity and incentive to obtain her own auto

insurance, as was true in this case.  But whether the Shelter General definition had a

plausible rationale for excluding the resident relative who owns an auto, the policies

issued to plaintiff's parents did so, and not being in contravention of the intent of the

statute, they must be enforced as written.

That the definition of relative as used in Policy ## 5 and 6 was not in

contravention of the intent of C.R.S. § 10-4-609(1) at the time those policies were

issued, is reinforced by the later action of the Colorado Legislature.  As defendants

point out in their response brief (Dkt. # 40 at 2), in 2003 the legislature adopted a

definition of the term "resident relative" now incorporated at C.R.S. § 10-4-601(13).  The

current statutory definition of resident relative would not permit the exclusion of the

resident relative because she owns her own auto.  But, as plaintiff recognized, that

statutory definition was not in place at the time Policy ## 5 and 6 were issued to

plaintiff's parents and does not apply here.  That the legislature found it necessary to

adopt a statutory definition of "resident relative" broader than the definition contained in

the policies at issue here, suggests that the legislature saw a need to adopt a legislative policy that was not previously extent in the UI/UIM coverage requirements.

Accordingly, I find that the definition of relative contained in Policy ## 5 and 6, to the extent it excludes a resident relative who owns her own auto, was not contrary to the public policy underlying C.R.S. § 10-4-609(1) at the time those policies were issued. Under the plain language of the definition, based on the undisputed circumstances present in this case, plaintiff is not entitled to receive UI/UIM coverage under those policies. Plaintiff's motion for summary judgment to the extent it requests a declaration of coverage under Policy ## 5 and 6, is denied. Defendants' motion for summary judgment to the extent it requests a declaration of no coverage under those policies is granted.

Given the above rulings, there is no need to address the remaining issues raised in plaintiff's motion for summary judgment.

**CONCLUSION**

Defendants' Motion For Summary Judgment arguing that plaintiff's claims are time barred (Dkt. # 17) is DENIED.

Plaintiff's Combined Motion for Summary Judgment (Dkt. # 19) is GRANTED in part and DENIED in part. Plaintiff's Second Motion to Substitute a Section B to Reply Brief (Dkt. # 37) is GRANTED.

Plaintiff is entitled to an order confirming the arbitrators' award of costs and plaintiff is entitled to a judgment awarding $8,123.59 for the costs of the arbitration, plus interest on that amount from the date of the arbitrators' Amended Award to the date of

judgment.  The Clerk of the Court is directed to enter a judgment for plaintiff in that amount.  In all other respects, plaintiff's motion is DENIED.

Defendants' request for summary judgment as set forth in Dkt. # 25 is GRANTED and the Clerk shall enter judgment dismissing plaintiff's first, second, third and fourth claims for relief in all respects, other than the claim for the costs of the arbitration as set forth above.

 Each party shall bear her or its own costs incurred in this case.

DATED:  January 23, 2008

BY THE COURT:

*s/ John L. Kane*

_____
John L. Kane
United States Senior District Judge